Bree OWENS, Appellant,

v.

**UNIFIED INVESTIGATIONS & SCIENCES, INC. and Hurschell Alexander, Respondents.**

No. ED 84537.

Missouri Court of Appeals,
Eastern District,
Division Three.

May 17, 2005.

Anthony S. Bruning, James C. Leritz (co-counsel), St. Louis, MO, for appellant.

Cathleen C.A. Wrisberg, St. Louis, MO, for respondents.

## OPINION

GLENN A. NORTON, Judge.

Bree Owens appeals the summary judgment denying her claims for negligence against a fire investigator for failing to preserve evidence. We affirm.

## I. BACKGROUND

There was a fire in Owens's two-story apartment, and the smoke detectors failed to sound an alarm. As a result, Owens was unable to escape from the second floor by going down the interior stairs and had to jump from a second-story window. She sustained serious and permanent injuries. Unified Investigations & Sciences, Inc. ("UIS") was retained on behalf of the building owner's insurance company to conduct an investigation on the day of the fire. The UIS service request form was addressed to the insurance company and signed by Hurschell Alexander, the UIS investigator assigned to this investigation. The only requested service was an "origin and cause investigation;" the other options were "scene examination," "full investigation," "background investigation" and "other." The form was furnished to the insurance company as "privileged and confidential" and release to anyone else was solely the insurance company's responsibility.

At the time of the investigation, Alexander knew that Owens had jumped out of a second-story window and had been seriously injured. Alexander stated that any time he is retained by an insurance company to investigate the origin and cause of a fire, he understands that there is the possibility of litigation and that he may be called as an expert witness. He took photographs of this fire scene and obtained some items of physical evidence, but did not take any statements or interview any witnesses. Nor did he photograph or obtain the smoke detectors, record who manufactured them or investigate whether they sounded an alarm; he did not alter or destroy the smoke detectors either. Alexander stated that, in the performance of this origin and cause investigation for the insurance company, he had no reason to obtain the smoke detectors as evidence. According to Alexander, the defendants were not aware that the investigation was being performed for the benefit of anyone other than the insurance company and had no knowledge or information that Owens or anyone other than the insurance company would rely on this investigation or on the defendants in any respect. About five months after the fire, the apartment building underwent renovation by new owners, and the smoke detectors were removed and discarded.

Owens filed suit against the building owner, alleging negligence relating to the inadequate smoke detectors and electrical system. Alexander was retained as an expert witness for the defense in that case, and Owens hired her own expert to investigate the fire scene.

Owens then filed a separate action against Alexander and UIS, which is the subject of this appeal. In this petition, Owens alleged that Alexander owed her a duty to exercise reasonable care in his fire investigation, including a duty to identify, document and preserve relevant evidence according to widely-accepted fire investigation techniques. Because of Alexander's failure to preserve the smoke detectors, Owens claimed, she was unable to identify and sue the manufacturers and sellers of those smoke detectors. She alleged that UIS, as Alexander's employer, was negligent for failing to train and supervise him on proper fire investigation techniques. The defendants filed a motion for summary judgment, arguing that as a matter of law they owed no duty to Owens because she was not a party to the agreement under which they conducted this investigation for the building owner's insurance company and that Owens could not prove that their conduct proximately caused her inability to identify and sue the smoke detector manufacturers and sellers. Owens admitted that the defendants were retained by the insurance company, but disputed that the investigation was performed for the sole benefit of the insurance company. Rather, she claimed, the defendants owed her a duty under industry standards for fire investigation techniques. The trial court concluded that the defendants had no duty and entered summary judgment in their favor.

## II. DISCUSSION

The propriety of summary judgment is a question of law, and our review is *de novo*. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria for determining the propriety of summary judgment on appeal are no different than those used at the trial level. *Id.* The party seeking summary judgment must establish an undisputed right to judgment as a matter of law. *Id.* at 380. UIS and Alexander, as the defending parties, may establish this right by showing (1) facts that negate any one of the elements of the plaintiff's claim,

(2) that the plaintiff, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of those elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support a properly-pled affirmative defense. *Id.* at 381. Although we view the record and construe all inferences favorably to the non-movant, facts set forth in support of the summary judgment motion are taken as true unless contradicted by the non-movants response. *Id.* at 376, 382–83.

In this negligence action, Owens must establish that the defendants had a duty to protect her from injury, that they failed to perform that duty and that this failure proximately caused her injury. *See L.A.C. ex rel. D.C. v. Ward Parkway Shopping Center Company, L.P.,* 75 S.W.3d 247, 257 (Mo. banc 2002). "Whether a duty exists is purely a question of law." *Id.*

Generally, a defendant who has contracted with another owes no duty to a plaintiff who is not a party to that agreement, nor can a non-party sue for negligent performance of the contract. *Kaplan v. U.S. Bank, N.A.,* 166 S.W.3d 60, 70, 2003 WL 1204937, Case No. ED80671 *6 (Mo. App.E.D. March 18, 2003)[1]; *Fleischer v. Hellmuth, Obata & Kassabaum, Inc.,* 870 S.W.2d 832, 834 (Mo.App. E.D.1993). This general rule of privity is designed to protect contractual parties from exposure to unlimited liability and to prevent burdening the parties with obligations they have

not voluntarily assumed. *Kaplan,* 166 S.W.3d at 70, 2003 WL 1204937 at *6; *Westerhold v. Carroll,* 419 S.W.2d 73, 77 (Mo.1967). "But when application of this rule is not necessary to protect the contractual parties, or when it would produce results contrary to justice and public policy, our courts make exceptions." *Kaplan,* 166 S.W.3d at 70, 2003 WL 1204937 at *6. The liability of a contractual party to those not in privity is determined on a case-by-case basis. *Id.; see also Westerhold,* 419 S.W.2d at 77. The proper inquiry is whether the defendant has assumed a duty of reasonable care to prevent foreseeable harm to the plaintiff. *Kaplan,* 166 S.W.3d at 70, 2003 WL 1204937 at *6; *L.A.C.,* 75 S.W.3d at 263. The existence and scope of the duty is determined by the contractual obligations the defendant undertook and the circumstances of the case. *Kaplan,* 166 S.W.3d at 70, 2003 WL 1204937 at *6; *see also L.A.C.,* 75 S.W.3d at 263.

Owens claims that her inability to identify and sue the manufacturers and sellers of the smoke detectors was a foreseeable consequence of the defendants' failure to exercise reasonable care in conducting the fire investigation. Owens spends much of her brief discussing the standards of care that have been established by the fire investigation industry and how those standards were breached in this case. She contends that these industry standards place a duty on all fire investigators to interview witnesses and discover and preserve significant evidence. This argument is misplaced. The industry standards she cites may be relevant to establishing the

---

1.  Westlaw correctly indicates that *Kaplan* was transferred to the Supreme Court on July 1, 2003, but does not include the further subsequent history of that case. The case was retransferred back to this Court without further explanation by order of the Supreme Court on October 28, 2003. This Court then readopted the March 18, 2003 opinion in November of 2003, disposed of further post-opinion matters and issued our mandate in December of 2003. The *Kaplan* opinion cited herein is, therefore, the final opinion in that case.

appropriate standard of care, but they do not answer the question of to whom the duty to act according to that standard of care extends. That question is answered in this case by reference to the circumstances under which this investigation was performed and whether these circumstances tend to show that harm to Owens was foreseeable. Here, the defendants undertook to investigate the origin and cause of this fire for the insurance company. Alexander had no reason to obtain the smoke detectors as evidence for the insurance company, and the defendants were not aware that the investigation was being performed for the benefit of anyone other than the insurance company. They had no reason to believe that Owens or anyone other than the insurance company would rely on this investigation in any respect, much less for the preservation of evidence for her claims against the smoke detector manufacturers and sellers.

Owens points to Alexander's testimony that, at the time of the investigation, he knew that Owens had been injured and that, any time he is retained to investigate the cause and origin of a fire for an insurance company, he knows that litigation is possible and that he may be called as an expert witness. Alexander's general understanding that litigation is a possible consequence of every fire he investigates does not translate into a duty to identify and preserve evidence relevant to Owens's litigation against the smoke detector manufacturers and sellers when there is no indication that, at the time of the investigation, Alexander had any reason to know that Owens might have such claims. Although it is undisputed that the smoke detectors failed, there is no evidence that Alexander knew that at the time of his investigation. It simply was not foreseeable to the defendants at the time of the investigation that Owens would have a claim regarding defective smoke detectors,

much less that she would rely on an investigation they were conducting for the building owner's insurance company for evidence to support those claims.

Owens cites to *Kaplan* for the proposition that when a defendant undertakes to do something that the defendant knew or should have foreseen would harm others or increase the risk of harm to others, the defendant has a duty to exercise care in that undertaking. 166 S.W.3d at 70, 2003 WL 1204937 at *6. This is a reiteration of the well-recognized exception to the requirement of privity for situations where the negligence involves the safety of others. *Id.* (citing *Wolfmeyer v. Otis Elevator Co.*, 262 S.W.2d 18, 21 (Mo.1953) and *L.A.C.*, 75 S.W.3d at 262). In *Kaplan*, the defendant's agreement to remediate contaminated materials on its property expressly prohibited illegal or inappropriate disposal of those materials and expressly required disposal only at permitted landfills or on the defendant's own property. 166 S.W.3d at 71, 2003 WL 1204937 at *7. We concluded that the defendant, therefore, had a duty to prevent disposal on property without that property owner's permission. *Id.* "The harm that could befall property owners from the dumping of contaminated materials without the owners' permission, including these plaintiffs, was foreseeable." *Id.* In *L.A.C.*, the defendant security company's contract with the shopping mall where the plaintiff was injured expressly provided that security was for mall patrons, and the Court found that the duty of reasonable care to prevent foreseeable harm extended to the plaintiff who was a mall patron. 75 S.W.3d at 251–263. In *Wolfmeyer*, the defendant contracted with a building owner to maintain the elevators in the building and owed the plaintiff, who resided in the building, a duty to exercise reasonable care in the performance of that contract. 262 S.W.2d

at 21.[2] Here, the defendants' performance of a cause and origin investigation after the fire did not affect the safety of others in the way that disposing of contaminated materials, providing mall security and maintaining elevators does. Moreover, in *L.A.C.*, the security company's contract expressly provided that security was for mall patrons like the plaintiff, and in *Kaplan*, the defendant expressly agreed not to do the very act—dispose of the materials inappropriately—that caused the plaintiffs' injury. Here, there was no express mention in the agreement under which the defendants performed this investigation of Owens, the building occupants, or the preservation of any particular evidence.

Nor is this case like those in which we have imposed a duty despite the lack of privity because the defendant had a reason to expect that the plaintiff would rely on or benefit from the services the defendant performed. In *Miller v. Big River Concrete, LLC,* the defendant tested concrete at the plaintiffs' construction site at the request of the concrete supplier. 14 S.W.3d 129, 131 (Mo.App. E.D.2000). The defendant was informed that he was to observe the concrete at the request of a third-party, that the plaintiffs wanted to be there for the testing and that the plaintiffs owned the residence being built. *Id.* This evidence supported a finding that the defendant knew the results of those tests would be relied on by the plaintiffs and could foresee the harm to them if the results were inaccurate; thus, privity was not required. *Id.* at 134. In *Aluma Kraft Manufacturing Company v. Elmer Fox & Company,* a duty was imposed on the defendant accountant towards the plaintiffs despite a lack of privity because the accountant knew that the audit would be used by the plaintiff for its benefit or that the accountant's client intended to supply the information in the audit to the plaintiffs. 493 S.W.2d 378, 383 (Mo.App.1973). Here, the defendants had no reason to believe that Owens would rely on their investigation for evidence relating to the smoke detectors; nor is there any evidence that the defendants had any reason to believe that the insurance company intended to provide the investigation results to Owens or any of the building's occupants. The harm here—the inability of Owens to identify and sue the smoke detector manufacturers and sellers—was not foreseeable under these circumstances.

■ Besides the lack of foreseeability, consideration of the other relevant public policy factors weighs against extending a duty to Owens in this case:

The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.

*Westerhold,* 419 S.W.2d at 81. As discussed above, this transaction was not intended to benefit or otherwise affect Owens and was understood to be solely for the benefit of the insurance company. The inability to identify and sue the smoke detector manufacturers and sellers is only an injury if Owens would have prevailed in

**2.** The Court ultimately concluded, however, that there was no liability because the defendant did not undertake the particular obligation that the plaintiff claimed had been negligently performed.

such a suit, and that is far from certain. There is not a close connection between this injury and the defendants' conduct because the defendants did not destroy the smoke detectors nor do anything to prevent Owens from recovering that evidence herself during the several months between their investigation and the time the building was renovated. Because the defendants did not directly cause Owens's injury, which she could have prevented herself with more diligence, there is no moral blame attached to the defendants' conduct nor any preventative benefit to imposing a duty on the defendants in this case.

Finally, application of the rule of privity is necessary in this case to protect the contractual parties. It seems that the number of potential plaintiffs to whom the defendants would owe a duty under these circumstances could be limited to those individuals that the defendants knew had been injured in the fire. Nevertheless, if that knowledge, coupled with a general understanding that litigation may arise from the fire, is enough to impose a duty on the defendants to preserve any particular evidence, then the duty necessarily includes the responsibility to preserve all evidence that might be relevant to the myriad types of claims the injured parties might have. This is not a duty that the defendants voluntarily assumed when they undertook to investigate the origin and cause of this fire for the insurance company.

In sum, when the defendants undertook to perform the cause and origin investigation of this fire for the building owner's insurance company, they did not assume a duty of reasonable care to preserve evidence for Owens's lawsuit against the smoke detector manufacturers and sellers because that harm was not foreseeable. There are no public policy reasons to impose a duty, and application of the rule of privity is necessary in this case to protect the defendants from unlimited liability and additional burdens they have not voluntarily assumed. Thus, as a matter of law, the defendants owed no duty to Owens and summary judgment in their favor was proper.

### III.  CONCLUSION

The judgment is affirmed.

CLIFFORD H. AHRENS, P.J., and NANNETTE A. BAKER, J., concurring.