Dale HANEY, Jonathan Haney, and
Shannon Haney, Appellants,

v.

FIRE INSURANCE EXCHANGE, Napoleon Roybal, and Apex Environmental
Consultants, Inc., Respondents.

No. SD 29098.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 9, 2009.

Roger A. Johnson, Eryn M. Peddicord, Johnson & Vorhees, LLC, Joplin, for Appellants.

William J. Lasley, Flanigan, Lasley & Moore, LLP, Joplin, for Respondent Fire Insurance Exchange.

Jeffrey W. Laney, Haden, Cowherd & Bullock, L.L.C., Springfield, for Respondent Napoleon Roybal.

James C. Morrow, Peggy A. Wilson, Morrow, Willnauer & Klosterman, L.L.C., Kansas City, for Respondent Apex Environmental Consultants.

Before BARNEY and BATES, JJ., and SCOTT, P.J.

## PER CURIAM.

Plaintiffs sued Defendants Fire Insurance Exchange (FIE), Roybal, and Apex for mold exposure. After several years of legal maneuvering irrelevant to this appeal, the action was dismissed for failure to state a claim. Plaintiffs appeal.

## General Allegations

On April 15, 2001, a tornado tore the roof from a home owned by Gay and Larry Taylor and insured by FIE. The Taylors hired Plaintiffs, d/b/a Haney Construction, to assess and fix the damage. Plaintiffs understood FIE would pay for the repairs.

Several weeks later, following rains on the damaged house, FIE hired Apex to do an environmental study "which revealed dangerous and toxic airborne mold and fungal spores ... in concentrations posing a health risk to humans in the Taylor home." [1] Apex notified Roybal, FIE's adjuster, on May 21, followed by a May 31 report indicating the molds could produce mycotoxins "which could be poisonous to individuals if inhaled."

Although Roybal and FIE knew Plaintiffs were working in the home intermittently, unaware of the mold or the risks it posed, they did not warn Plaintiffs or disclose Apex's findings for nearly four weeks. The reason, according to the petition, was that Roybal and FIE hoped to underpay the Taylors' insurance claim.

Alleging personal injuries due to mold exposure, Plaintiffs sued Defendants for fraudulent misrepresentation, negligence, and civil conspiracy. The trial court, as noted, eventually dismissed all claims.

## Principles of Review

■■■ Our review is de novo. *Jackson v. Williams, Robinson, White & Rigler, P.C.*, 230 S.W.3d 345, 348 (Mo.App.2007). A motion to dismiss for failure to state a claim is solely a test of the petition's adequacy. The court assumes the truth of all facts alleged, without attempting to determine if they are credible or persuasive,

---

1. Larry Taylor, an immunocompromised liver transplant recipient, needed to avoid exposure to molds or mildews. Our opinion in the companion appeal of *Taylor v. Fire Insurance Exchange, et al.*, No. SD29102, also is handed down today. Careful readers of both opinions will discern that the allegations in each case were not necessarily identical.

and reviews the petition in an almost academic manner to decide if the pleaded facts invoke a recognized or potential cause of action. *See State ex rel. Union Elec. Co. v. Dolan,* 256 S.W.3d 77, 82 (Mo. banc 2008); *Pennington v. Dobbs,* 235 S.W.3d 77, 79 (Mo.App.2007). Yet, our civil procedure rules "demand more than mere conclusions that the pleader alleges without supporting facts." *Pulitzer Pub. v. Transit Cas. Co.,* 43 S.W.3d 293, 302 (Mo. banc 2001). Courts are to disregard such conclusions in determining if a petition states a claim. *Pikey v. Bryant,* 203 S.W.3d 817, 824 (Mo.App.2006); *Solberg v. Graven,* 174 S.W.3d 695, 699 (Mo.App. 2005).

## Points I & II

### Fraudulent Misrepresentation/Negligence (Roybal & FIE)

■ The petition describes a dangerous mold condition in the Taylor home, but not one caused by Defendants. Finding that Roybal and FIE neither owned nor controlled the property, and had no relationship with Plaintiffs that would impose any duty to warn of or rectify the condition, the trial court dismissed these claims on premises liability principles.

■ Plaintiffs argue that their claims sound in general negligence, not premises liability. We disagree. Premises liability is triggered by assertions, as in this case, that "the cause of the injury or damage was an unsafe or defective condition of the property itself." *See Nagaragadde v. Pandurangi,* 216 S.W.3d 241, 245 (Mo.

App.2007). Such liability generally is limited to those who own or control the property. *See Dolan,* 256 S.W.3d at 83–84.[2]

■ Plaintiffs cite Restatement (Second) of Torts § 323, which imposes a duty of care upon one who, gratuitously or otherwise, undertakes "to render services to another." We find this principle inapplicable. Plaintiffs allege that Apex tested the property at FIE's request. Since parties are strongly presumed to enter agreements only to benefit themselves, not third parties,[3] we presume FIE hired Apex solely for FIE's own purposes in evaluating liability and adjusting the Taylors' claim. Furthermore, a defendant who contracts with another generally owes no duty to a plaintiff who is not a party to that agreement, nor can a non-party sue for negligent performance of the contract. *See Hardcore Concrete, LLC v. Fortner Insurance Services, Inc.,* 220 S.W.3d 350, 358 (Mo.App.2007). Conclusions aside, Plaintiffs' factual allegations warrant no finding that Apex undertook to provide services to anyone except FIE.

Nor are Plaintiffs aided by *Richey v. Philipp,* 259 S.W.3d 1 (Mo.App.2008), which did not involve a latent property danger, and in which the defendant admitted duty. *Id.* at 6, 14. Emphasizing *Richey*'s "limited and rare circumstances," the Western District felt "compelled to stress to … future litigants that our holding is limited strictly to the circumstances of this case." *Id.* at 13, 14.

Finally, Plaintiffs urge us to find duty from a calculus of policy considerations,

---

**2.** By contrast, such status is irrelevant in general negligence cases involving injury by negligent act or omission, rather than a dangerous condition of land. *See, e.g., Griffith v. Dominic,* 254 S.W.3d 195 (Mo.App.2008); *Daoukas v. City of St. Louis,* 228 S.W.3d 30 (Mo.App.2007); *Nagaragadde, supra.*

**3.** *See Nitro Distributing, Inc. v. Dunn,* 194 S.W.3d 339, 345 (Mo. banc 2006); *Milligan v. Chesterfield Village GP, LLC,* 239 S.W.3d 613, 622 (Mo.App.2007).

including foreseeability of harm. In that vein, this court recently observed that:

> "[W]hether a duty exists 'depends upon a calculus of policy considerations.' *Lough v. Rolla Women's Clinic, Inc.,* 866 S.W.2d 851 (Mo. banc 1993). Among these considerations, '[f]oreseeability is the paramount factor in determining existence of a duty, but a relationship between the parties where one is acting for the benefit of another also plays a role.' *Id.* ... *As such,* foreseeability is not enough to establish a duty. *Id.* In this respect, *there must also be some right or obligation to control the activity which presents the danger of injury.*"

*Burrell ex rel. Schatz v. O'Reilly Automotive,* 175 S.W.3d 642, 656 (Mo.App.2005)(quoting *Stitt v. Raytown Sports Ass'n, Inc.,* 961 S.W.2d 927, 930 (Mo.App.1998)).

In *Burrell,* a contribution claim was defeated for failure to show a right to control, and thus a duty to protect, the plaintiff in his use of a motorized scooter. 175 S.W.3d at 656–57. In *Stitt,* a sports association was not liable for a near-drowning accident at a baseball coach's home. It had no control over the pool party, and thus no duty to protect the child from unreasonable and foreseeable dangers associated therewith. 961 S.W.2d at 930–33.

*Burrell* also cited *Burns v. Black and Veatch Architects, Inc.,* 854 S.W.2d 450, 457 (Mo.App.1993), in which an open trench at a construction site collapsed on a worker. The plaintiff's experts claimed the project's geotechnical consultant should have realized the danger and offered protections against trench collapse. The court noted, however, that recognition of danger "is certainly not, on its own, a basis for a negligence action." *Id.* at 457. Since the consultant did not own or control the site, and had no right to control the plaintiff or his activities, it had no duty to protect the plaintiff. *Id.*

The trial court did not err in dismissing these claims as pleaded. We deny Points I and II.

### Point III—Negligence (Apex)

■ The trial court found that FIE hired Apex to perform testing and prepare a written report; Apex performed the requested work and timely delivered its report to FIE; and Apex thus discharged its duty owed to FIE. The court found that Apex owed Plaintiffs no legal duty, however, as there was no legal relationship or privity of contract between the parties and Apex did not possess or control the Taylors' premises. The court thus properly ignored Plaintiffs' allegation that Apex had a duty to warn, not just Plaintiffs and the Taylors, but the general public.[4]

■ Whether a duty exists is an issue of law, and a question for the court alone. *Hardcore Concrete,* 220 S.W.3d at 355. As already noted, a defendant who contracts with another generally owes no duty to contract non-parties, nor can a non-party sue for negligent performance of the agreement. *Id.* at 358; *Owens v. Unified Investigations & Sciences, Inc.,* 166 S.W.3d 89, 92 (Mo.App.2005). "This general rule of privity is designed to protect contractual parties from exposure to unlimited liability and to prevent burdening the parties with obligations they have not voluntarily assumed." *Owens,* 166 S.W.3d at 92. We find other states in accord. *See, e.g., Akpan v. Farmers Ins. Exchange, Inc.,* 961 So.2d 865, 874

---

4. Plaintiffs also alleged that Apex "agreed and undertook" to work "for the benefit and protection" of the Taylors and others coming onto the property, an assertion rejected in the prior section of this opinion.

(Ala.App.2007)(recognizing and adopting majority view that an independent adjuster or investigator, hired by an insurer to investigate or adjust an insured's claim, owes no duty to the insured); *Dagley v. Haag Engineering Co.*, 18 S.W.3d 787, 790–91 (Tex.App.2000)(collecting Texas cases for proposition that an insured cannot sue, for negligence, a contractor hired by its insurer to perform adjusting or testing services for the insurer).

Plaintiffs allege no facts to overcome or distinguish these principles, and cite no case credibly supporting their claim that Apex owed a duty of broad and general disclosure. Point III is denied.

### Point IV—Civil Conspiracy (All Defendants)

The trial court correctly found that Plaintiffs' civil conspiracy claim could not succeed without an underlying tort. Civil conspiracy is not actionable in its own right. Plaintiffs' underlying claims having failed, the civil conspiracy claim also fails as a matter of law. *Dueker v. Gill*, 175 S.W.3d 662, 673 (Mo.App.2005).[5]

### Conclusion

We are mindful of the relatively few cases indicating, generally in dissimilar situations, that duty may arise from foreseeable risk in the absence of privity or legal relationship. Yet the general rule is otherwise, as we noted in *Hardcore Concrete*, 220 S.W.3d at 358, with exceptions to be carefully determined on a case-by-case basis. The instant petition presumes legal duties of disclosure for which Plaintiffs have not cited, nor have we found, persuasive support. Plaintiffs' arguments are not wholly without emotional appeal, but the case law runs against them. Nor have Plaintiffs convinced us to extend generally recognized limits of liability to reach their allegations. The judgment, therefore, is affirmed.

---

5. We need not reach the court's further ruling that such claim was time-barred.